UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CHIKE OKEKE, an individual, ) | |
| ) | |
| Plaintiff, ) | 2:12-CV-01251-LRH-VCF |
| ) | |
| v. ) | |
| ) | ORDER |
| BIOMAT USA, INC., a Nevada corporation; ) | |
| GRIFOLS BIOLOGICALS INC., a Delaware ) | |
| corporation; DOES 1 through 25, inclusive; ) | |
| and ROE CORPORATIONS 1 through 25, ) | |
| inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This is an employment discrimination suit. Before the court is defendants Biomat USA, Inc. ("Biomat") and Grifols Biologicals Inc.'s ("Grifols") Motion to Dismiss (#9[1]). Plaintiff Chike Okeke has responded (#13), and Defendants have replied (#14). Also before the court is Defendants' Motion to Strike (#8), to which Okeke has responded (#12) and Defendants have replied (#15).

**I.   Facts and Procedural History**[2]

Okeke began employment with Biomat as an Operations Supervisor in 2009 (Complaint #1,

---

[1] Refers to the court's docket entry number.

[2] In reviewing a motion to dismiss, the court accepts facts alleged in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

¶ 17.) Over the course of his employment, Okeke's supervisors subjected him to unwarranted disciplinary action and ultimately, in 2012, termination. (*Id.* at ¶ 23.) This disciplinary action included a written reprimand based on Okeke's "intonation, facial expressions, and non-verbal communication." (*Id.* at ¶ 24.) Okeke also alleges that his supervisors did not take his workplace harassment claims seriously (*id.* at ¶ 30) and that he was passed over for raises and promotions while others with lesser qualifications were not (*id.* at ¶¶ 34-35). Finally, Okeke claims that Biomat terminated him after it became aware of his complaint with the Equal Opportunity Employment Commission ("EEOC"). (*Id.* at ¶¶ 40-42.)

Okeke has lodged eight causes of action against both Biomat and Grifols: (1) national origin discrimination, (2) "public policy tort," (3) respondeat superior, (4) negligent hiring, supervision, and training, (5) retaliation, (6) Nevada race and national origin discrimination, (7) intentional infliction of emotional distress, and (8) defamation. Following the Defendants' Motion to Dismiss, Okeke did not oppose the motion to dismiss all claims against Grifols. (Okeke's Response #13, p. 9:21-22.) Therefore, the remaining claims concern only Biomat. And Biomat has moved to dismiss all of them under Federal Rule of Civil Procedure 12(b)(6).

## II.  Legal Standard

To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hospital Medical Center*, 521 F.3d 1097, 1103 (9th Cir. 2008). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks

omitted). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 678-79. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* (citation omitted). However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 680) (alteration in original) (internal quotation marks omitted). The court discounts these allegations because they do "nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

**III.    Discussion**

Okeke's Title VII discrimination and retaliation claims, his Nevada discrimination claim, and his defamation and negligent training and supervision claims survive Biomat's Motion to Dismiss. The remaining claims do not.

**A. Discrimination on the Basis of National Origin**

Okeke has successfully alleged a claim for discrimination on the basis of national origin under Title VII. Under this Title, it is unlawful for an employer to discriminate against an employee on the basis of national origin. 42 U.S.C. § 2000e-2(a). In order to make out a prima facie case of discrimination on the basis of national origin, Okeke must show "(1) he belonged to a protected class; (2) he was qualified for his job; (3) he was subjected to an adverse employment action; and

(4) similarly situated employees not in his protected class received more favorable treatment." *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 818 (9th Cir. 2002) (discussing national origin discrimination).

Here, Okeke has successfully established membership in a protected class–people of Nigerian national origin. *See id.* Furthermore, Okeke has alleged he was an "exemplary" employee, that he completed his master's degree, and that others were less qualified for similar positions (lacking, for example, similar credentials).[3] (Complaint #1 at ¶¶ 19, 35.) Taken together, these allegations are sufficient in light of "judicial experience and common sense" to establish that Okeke was qualified for his job. *Iqbal*, 556 U.S. at 678. And Okeke has alleged that he was disciplined more often than similarly situated non-Nigerians, that he was denied a raise when others similarly situated were not, and that he was terminated for an infraction when others similarly situated were not terminated for the same infraction. (Complaint #1 at ¶¶ 23, 34, 38.) These allegations are enough to establish that "similarly situated employees not in his protected class received more favorable treatment." *Kang*, 296 F.3d at 818. Therefore, Okeke has made out a prima facie case of discrimination on the basis of national origin.

Biomat argues that Okeke has failed to properly allege exhaustion of his administrative remedies. Okeke has claimed that he "filed his Charges of Discrimination with the [EEOC]" and "received a copy of his 'Right to Sue' notice." (Complaint #1 at ¶¶7-8.) Biomat does not think this is enough, since Okeke did not specify which "Charges of Discrimination" he filed with the EEOC.

The court disagrees. While a lawsuit following the exhaustion of administrative remedies

---

[3] Is Okeke's allegation that he was an "exemplary employee" the type of "legal conclusion" that *Iqbal* attempted to weed out? It is unclear, as this provision of *Iqbal* "makes no sense because there is no clear division between legal conclusions and factual allegations." Robert G. Bone, *Plausibility Pleading Revisited and Revised: A Comment on Ashcroft v. Iqbal*, 85 Notre Dame L. Rev. 849, 852 (2010); *see also Iqbal*, 556 U.S. at 697-98 (Souter, J., dissenting). Accordingly, *Iqbal* is better understood as a generalized mandate to narrow the aperture between pleading and discovery in light of "judicial experience and common sense" rather than to engage in the quixotic filtering of legal conclusions from factual allegations.

4

must be "like and reasonably related to" the charges lodged with the EEOC, *EEOC v. Farmer Brothers Co.*, 31 F.3d 891, 899 (9th Cir. 1994), the only "reasonable inference" from Okeke's Complaint is that his EEOC charges included national origin discrimination, *see Moss*, 572 F.3d at 969. Indeed, claims stemming from national origin discrimination are the only claims Okeke brings under Title VII. Thus, Okeke's allegations properly establish that Okeke has exhausted his administrative remedies. 42 U.S.C. § 2000e-5(f)(1).

### B. Retaliation

Title VII also prevents actions taken in retaliation for protected activity. To state a prima facie case of retaliation under Title VII, Okeke must show that (1) he engaged in a protected activity, (2) he was subject to an adverse employment action, and (3) there exists a causal link between the protected activity and the employer's action. *Passantino v. Johnson & Johnson Consumer Products*, Inc., 212 F.3d 493, 506 (9th Cir. 2000). "Protected activities" include the filing of charges with the EEOC. *See id.* at 506-507. Of course, termination of an at-will employee may constitute an "adverse employment action." *See, e.g.*, *Wilkerson v. New Media Technology Charter School, Inc.*, 522 F.3d 315, 320 (3d Cir. 2008).

Okeke has successfully established the elements of a prima facie case of retaliation under Title VII. Biomat does not dispute that Okeke has properly alleged the first and second elements of the prima facie case. Rather, Biomat argues that Okeke's allegations of causation fail to rise above a legal conclusion. The causal link may be demonstrated inferentially through a combination of the employer's knowledge that the employee engaged in a protected activity and the proximity in time between the protected activity and the adverse employment action. *See Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988). Here, Okeke has alleged facts that give rise to a reasonable inference of causation. First, Okeke's filing of charges with the EEOC served to notify Biomat of Okeke's complaint. *See* 42 U.S.C. § 2000e-5(e)(1). Second, Okeke alleges that he was fired one month after filing these charges. (Complaint #1 at ¶ 40.) Since these facts together give rise to a reasonable

inference of causation, Okeke's retaliation claim survives.

**C.  Race and National Origin Discrimination under Nevada Statutes**

Under the Nevada Equal Employment Opportunity Act, Nev. Rev. Stat. § 613.330 *et seq.*, national origin discrimination claims contain the same elements as similar claims under Title VII. *Apeceche v. White Pine County*, 615 P.2d 975, 977 (Nev. 1980) (citing federal decisions under Title VII). Recognizing this similarity, Biomat has argued the same deficiencies in the pleading of this claim as it did with respect to the Title VII claim, excepting only the exhaustion argument. Since the court has determined Okeke sufficiently pleaded a claim under Title VII for national origin discrimination, Biomat's argument fails.

**D.  Defamation**

In Nevada, the plaintiff bears the burden of proving four elements in a defamation claim: "(1) a false and defamatory statement; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Clark County School District v. Virtual Education Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009). Biomat argues that a heightened pleading standard applies to defamation claims in light of the "First Amendment rights" at stake, *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002), and, unsurprisingly, that Okeke failed to meet this heightened standard. In particular, Biomat argues that Okeke has failed to list "the precise statements alleged to be false and defamatory, who made them, and when." *Flowers*, 310 F.3d at 1131.

Courts have not looked with favor upon heightened pleading requirements for defamation because defamation is not included within the categories covered by Federal Rule of Civil Procedure 9. *See TransFresh Corp. v. Ganzerla & Associates, Inc.*, 862 F. Supp. 2d 1009, 1018 n.2 (N.D. Cal. 2012) (collecting cases). To the extent heightened pleading requirements have come into play, they have entered through Rule 9(g)'s requirement that special damages be pleaded with specificity. However, special damages are presumed (and thus not subject to Rule 9(g)) when the plaintiff alleges defamation per se.  "[I]f the defamatory communication imputes a 'person's lack of

1  fitness for trade, business, or profession,' or tends to injure the plaintiff in his or her business, it is
2  deemed defamation per se and damages are presumed." *Clark County*, 213 P.3d at 503.

3  Aside from the pleading of special damages, there are no heightened pleading requirements
4  for defamation claims, and there is reason to be skeptical of a contrary interpretation of *Flowers*.
5  First, *Flowers* involved a defamation claim against a public figure, for which First Amendment
6  protections are strongest. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *see also*
7  *Flowers*, 310 F.3d at 1129 ("First Amendment concerns are particularly acute when the plaintiff is
8  a public figure."). Second, the *Flowers* court assumed, without deciding, that a heightened pleading
9  standard imported from the *Noerr-Pennington* context applied because the plaintiff's complaint
10 met that standard.

> Despite the apparent breadth of its holding, we have yet to apply *Franchise Realty* outside the *Noerr-Pennington* context. We also note some tension between *Franchise Realty* and *Calder v. Jones,* 465 U.S. 783, 790-91 (1984) ("We have . . . declined in other contexts to grant special procedural protections [in defamation suits] in addition to the [substantive First Amendment] protections . . . ."). Because Flowers's complaint satisfies either pleading standard, we assume that *Franchise Realty* applies.

15 *Flowers*, 310 F.3d at 1131 n.8. Third, the *Franchise Realty* pleading standard (on which the
16 *Flowers* court relied) arose in the antitrust context, in which "the long drawn out process of
17 discovery can be both harassing and expensive." *Franchise Realty Interstate Corp. v. San*
18 *Francisco Local Joint Executive Board of Culinary Workers*, 542 F.2d 1076, 1082 (9th Cir. 1976).
19 Combined with the noted "tension" with later Supreme Court precedent, Rule 9's silence, and the
20 subsequent reluctance of district courts to recognize a heightened pleading standard for defamation,
21 *Flowers* does not establish such a standard. The court therefore declines to follow *Flowers*' dicta
22 down the primrose path.

23 Here, Okeke's defamation claim rests entirely on his allegation that Biomat told an
24 employee of another corporation, Telecris, that Okeke "was terminated because he sexually
25 harassed a woman." (Complaint #1 at ¶ 42.) Courts have found that allegations of sexual
26 harassment against a professional can impute a lack of fitness. *See, e.g.*, *Ricciardi v. Weber*, 795

7

A.2d 914, 928 (N.J. Super. Ct. App. Div. 2002); *Wilcoxon v. Red Clay Consolidated School District Board*, 437 F. Supp.2d 235, 247–48 (D. Del. 2006). Accordingly, Okeke has successfully alleged a defamation per se claim in which special damages are presumed.

### E. Negligent Hiring, Supervision, and Training

To state a claim for negligent training and supervision in Nevada, Okeke must show "(1) a general duty on the employer to use reasonable care in the training and/or supervision of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation." *Reece v. Republic Services, Inc.*, 2011 WL 868386, *11 (D. Nev. Mar. 10, 2011).[4] Claims for negligent training and supervision are based upon the premise that an employer should be liable when it places an employee, who it knows or should have known behaves wrongfully, in a position in which the employee can harm someone else. *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 79 (D.D.C. 2005). An employee's wrongful behavior does not in and of itself give rise to a claim for negligent training and supervision. *Colquhoun v. BHC Montevista Hospital, Inc.*, 2010 WL 2346607, *3 (D. Nev. June 9, 2010). "Because the question of whether reasonable care was exercised almost always involves factual inquiries, it is a matter that must generally be decided by a jury." *Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1065 (Nev. 2007).

Here, Okeke has alleged that he was subject to discriminatory treatment from his supervisor, that he complained about this treatment, and that Biomat did nothing about it. (Complaint #1 at ¶¶ 22-31.) These allegations are sufficient to state a claim that Biomat did not

---

[4] Biomat argues that physical harm is necessary to a claim of negligent training and supervision. Some opinions of this district agree. *See Robertson v. Wynn Las Vegas LLC*, 2:10-CV-00303-GMN, 2010 WL 3168239 *4-6 (D. Nev. Aug. 9, 2010) (collecting cases and certifying the question to the Nevada Supreme Court (which could not rule because the case was dismissed)). The Nevada Supreme Court has not yet addressed the physical harm requirement, and "[i]n the absence of conclusive authority, the court will not graft a physical injury requirement onto the tort of negligent . . . supervision." *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 81 (D.D.C. 2005) (collecting cases). Notably, the majority approach (including California law, which is especially persuasive authority in Nevada) does not require physical harm. *See* Nesheba M. Kittling, *Negligent Hiring and Negligent Retention: A State-by-State Analysis*, ABA 4th Annual Section of Labor and Employment Law Conference (Nov. 6, 2010), *available at* http://abalel.omnibooksonline.com/ 2010/data/papers/087.pdf.

8

exercise reasonable care in training or supervising Okeke's supervisor. *See Walker v. Venetian Casino Resort, LLC*, 2012 WL 4794149, *12 (D. Nev. Oct. 9, 2012). Therefore, this claim survives the Motion to Dismiss.

### F.  "Public Policy Tort"

Okeke has alleged that his discharge effected an unspecified "public policy tort," but this claim is not recognized by Nevada law. "Nevada's public policy against impermissible discrimination cannot be vindicated through a tortious discharge public policy tort, but rather, must be pursued through statutory remedies." *Herman v. United Brotherhood of Carpenters & Joiners of America, Local Union No. 971*, 60 F.3d 1375, 1385 (9th Cir. 1995) (citing *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989)). Therefore, this claim is dismissed.

### G.  Vicarious Liability

Okeke has alleged a claim for vicarious liability, but this is a theory of liability, not an independent cause of action. *See, e.g.*, *Fernandez v. Penske Truck Leasing Co., L.P.*, 2012 WL 1832571, *1 n.1 (D. Nev. May 18, 2012) ("Respondeat superior is a theory of holding an employer vicariously liable for the torts of its employee, it is not an independent cause of action."). Accordingly, this claim is dismissed.

### H.  Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress requires a showing that (1) the defendant's conduct was "extreme and outrageous", (2) that the defendant acted with the intention to cause the plaintiff severe emotional distress, or with reckless disregard for the probability of causing such distress, and (3) actual or proximate causation. *See Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993). Extreme and outrageous conduct is conduct which is "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation marks omitted). "Discriminatory employment practices are wrong and federal law makes such conduct unlawful and

provides for relief; however, the tort of intentional infliction of emotional distress is not intended to reach every discrimination claim." *Alam* 819 F. Supp. at 911.[5]

Here, Okeke has not alleged extreme and outrageous conduct sufficient to support a claim for intentional infliction of emotional distress. In *Shoen v. Amerco, Inc.*, 896 P.2d 469 (Nev. 1995), the Nevada Supreme Court held that verbal threats, frivolous litigation, and the withholding of retirement funds "for the express reason of causing . . . extreme financial hardship" constituted potentially extreme and outrageous conduct (in the employment context). While Okeke has alleged employment discrimination, his allegations do not suggest the kind of targeted, scorched-earth tactics addressed by *Shoen*. Furthermore, Okeke has not alleged emotional distress "so severe and of such intensity that no reasonable person could be expected to endure it." *Alam*, 819 F. Supp. at 911.[6] Indeed, his allegations of damage stop at the word "damage." (Complaint #1 at ¶ 88.) Therefore, the intentional infliction of emotional distress claim is dismissed.

**I.  Motion to Strike**

Biomat has also moved to strike paragraph 98 of Okeke's Complaint on the grounds that it requests punitive damages in favor of a non-party "Herbert." Okeke responds that the inclusion of this name was a drafting error, and he requests leave to amend his Complaint to correct the error by changing the name "Herbert" to "Mr. Okeke." Given the obvious nature of this drafting error and the liberal policy permitting amendment under the Federal Rules, leave to amend with respect to

---

[5] Biomat argues that Nevada does not recognize the tort of intentional infliction of emotional distress in the employment context. This is wrong. *See Shoen v. Amerco, Inc.*, 896 P.2d 469, 476 (Nev. 1995) ("Thus, contrary to the Ninth Circuit's holding in *Brooks,* the clear implication of this court's language in *MGM Grand* is that the tort of intentional infliction of emotional distress is recognizable in the employment termination context.").

[6] In support of his emotional distress claim, Okeke relies on the standard announced in *Conley v. Gibson*, 355 U.S. 41 (1957), noting, for instance, that "[t]he court cannot conclude that the plaintiff is not entitled to relief under any facts susceptible of proof under the claims stated." (Okeke's Opposition #13, p. 25:12-13.) Following *Iqbal* and *Twombly*, this is not the standard under which a court evaluates a motion to dismiss. *Iqbal*, 556 U.S. at 678.

this particular error (and a similar error in paragraph 3) is granted. *See* Fed. R. Civ. P. 15(a). The amended complaint is subject to the court's present order dismissing certain of Okeke's claims.

**IV.    Conclusion**

For the reasons given above, Okeke's claims against Grifols are dismissed without prejudice. In addition, Okeke's second, third, and seventh claims are dismissed without prejudice.

IT IS THEREFORE ORDERED that Biomat's Motion to Dismiss (#9) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Biomat's Motion to Strike is DENIED as moot. The Clerk of Court is directed to file #12-2 as Okeke's Amended Complaint.

IT IS SO ORDERED.

DATED this 23rd of February, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE